

# The Attorney General of Texas

November 30, 1978

JOHN L. HILL
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

701 Commerce, Suite 200
Dallas, TX. 75202
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

723 Main. Suite 610
Houston, TX. 77002
713/228-0701

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4313 N. Tenth, Suite F
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Peyton McKnight
Senate Study to Replace
  Ad Valorem Taxes
P. O. Box 12068
Austin, Texas 78711

Opinion No. H-1264

Re: Whether a tax on crude oil or on refined products is a tax on motor fuels and special motor fuels.

Dear Senator McKnight:

You have requested our opinion regarding a proposed statute which would tax refinery production. Your first question is:

> Would a tax imposed on the fair market value of refinery products, prior to their sale, use, transfer, or other disposition, be, as to that portion applicable to the value of motor fuels, considered a motor fuels tax which would be subject to the requirements of Articles 9 and 10 of Title 122A, Taxation-General, R.C.S.?

Chapters 9 and 10, title 122A, impose a tax on the "first sale, distribution, or use" of motor and special fuels. Attorney General Opinion WW-876 (1960) (defining "first sale"). Tax.-Gen. arts. 9.02, 10.03. The motor fuel tax "shall be in lieu of any other excise or occupation tax imposed . . . on the sale, use, or distribution of motor fuel." Tax.-Gen. art. 9.02(5). The proposed tax on refinery production would be before any "sale, use, transfer, or other disposition" of the motor fuels and therefore would not be a transaction which is taxable under chapters 9 or 10. Thus, the allocation provisions of those statutes would not apply to a refinery tax. However, article 8, section 7-a of the Texas Constitution provides in part:

> Subject to legislative appropriation, allocation and direction, all net revenues remaining after payment of all refunds allowed by law and expenses of collection derived from motor vehicle registration fees, and all taxes, <u>except gross production and ad valorem taxes,</u> on motor fuels and lubricants used to propel motor vehicles over public roadways, shall be used for the sole purpose of . . . [public roads and highways];

provided, however, that one-fourth (1/4) of such net revenue from the motor fuel tax shall be allocated to the Available School Fund. . . .

(Emphasis added).

If the proposed refinery tax is an ad valorem tax or a tax on gross production, the revenue need not be allocated pursuant to article 8, section 7a.  However, it appears that the proposed tax might be an occupation tax in which case one quarter of the tax revenue is allocated to education under article 7, section 3 of the constitution.  Attorney General Opinion V-1027 (1950).  As we have not been provided with the precise language of the contemplated statute, we cannot give a conclusive answer as to the character of the tax.

Your second question is:

> If the answer to question (1) is in the negative, would the use of current contracts and other sales products make a difference such that the answer to question (1) would become affirmative?

We do not believe that the use of "current contracts and other sales data" as evidence of the market value of refinery production would bring the tax within chapters 9 and 10, title 122A.  We believe such information is relevant to a determination of market value.  Cf. Tax.-Gen. art. 3.02; Attorney General Opinion M-968 (1971).  A refinery's products would be assessable with or without information regarding sales and contracts.  The tax would not be contingent on there being a sale, transfer or other distribution.

You also ask:

> Would an ad valorem tax on the crude oil inputs into the refinery be a motor fuels tax such that the revenues therefrom would be subject to the requirements of Title 122A, Articles 9 and 10?

We do not believe that revenue from a tax on the crude oil received by a refinery for processing is subject to chapters 9 and 10, title 122A.  Crude oil does not meet the definition of motor or special fuel and therefore is not taxed under chapters 9 and 10.  Tax.-Gen. arts. 9.01(1), 10.02(1), (2).

### S U M M A R Y

> An ad valorem tax on refinery production or crude oil is not subject to chapters 9 and 10, title 122A, Taxation-General.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee

jsn